Karen R. Baker, Justice, concurring. | ^Although I agree with the majority’s conclusion in affirming Thacker’s conviction, I- write separately becáuse I would employ a different analysis.. . At issue is the State’s motion to exclude DNA evidence and Thacker’s motion to admit the DNA evidence that Thacker asserts was relevant to his theory of mis-identification. Arkansas Code Annotated § 16-42-101, “Victim’s prior sexual conduct,” also known as our “rape shield” law, provides the standard by which the challenged evidence is presented to, and reviewed by, the circuit court. That section provides in pertinent part: (b) In any criminal prosecution under § 5-14-101 et seq. or § 5-26-202, or for criminal attempt to commit, criminal solicitation to commit, or criminal conspiracy to commit an offense defined in any of those sections, opinion evidence, reputation evidence, or evidence of specific instances of the victim’s prior sexual conduct with the defendant or any other person, evidence of a victim’s prior allegations of sexual conduct with the defendant of any other person, which allegations the victim asserts to be true, or evidence offered by the defendant- concerning priof allegations of sekual conduct by the victim with the defendant or any other person if the victim' denies making the allegations is not admissible by the defendant, either through direct examination of any defense witness or through cross-examination of the victim or other prosecution witness, to attack the credibility of the victim,, -to prove consent or any other defense, or for any other purpose. (c) Notwithstanding the prohibition contained in subsection (b) of this section, evidence directly pertaining to the act upon which the, prosecution is based or evidence of the victim’s prior sexual com. duct with the defendant or any other person may be admitted at the trial if the relevancy of. the evidence is determined in the following manner: (1) A written motion shall.be filed by the defendant- with the court at any time prior to the time the defense rests stating that the defendant has an offer of relevant evidence prohibited by subsection (b). of this section . and the purpose for which the evidence is believed relevant; (2)(A) A hearing on the motion shall be held in camera no later, than three (3) days before the trial is. scheduled to begin, or at such later time as the court may for. good cause permit. |S(B) A written record shall be made of the in camera hearing and shall be furnished to the Arkansas Supreme Court on appeal. (C) If, following the hearing, the court determines that the offered proof is relevant to a fact in issue, and that its probative value outweighs its inflammatory or prejudicial nature, the court shall make a written order stating what evidence, if any, may be. introduced by the defendant and the nature of the questions to be permitted in accordance with the applicable rules of evidence!.] Ark. Code Ann. § 16-42-101(b), (c) (Repl. 1999). In Gaines v. State, 313 Ark. 561, 567-68, 855 S.W.2d 956, 959 (1993), we addressed the requirements mandated by Ark. Code Ann. § 16-42-101. Prior to trial, Gaines filed a motion and sought to introduce the evidence regarding the victim’s virginity. The circuit court denied his motion and excluded the evidence.. We .affirmed- the circuit court and explained-that we cannot decide whether the evidence of the victim’s prior conduct was admissible under the - circumstances ■ of this case because Gaines failed- to proffer what the evidence would have been. ’ If the offered proof is relevant to a fact in issue, and its probative value outweighs ■its inflammatory or prejudicial nature, the court may -allow it to be introduced consistent with our rules of evidence. Ark. Code Ann. § 16-42-101 101(c)(2)(C)’ (1987). While the record contains a report from the North Little Rock Police Department in which the victim claimed she was a virgin before the rape, defense counsel nowhere proffered the testimony qf the witnesses he proposed to have testify to impeach her. This is not a new requirement; on numerous occasions, where the defense sought to introduce evidence of a rape victim’s prior sexual activity but no proffer of this evidence was made, we declined to consider the admissibility issue of this evidence on appeal. Duncan v. State, 263 Ark. 242, 565 S.W.2d 1 (1978). See Marcum v. State, 299 Ark. 30, 771 S.W.2d 250 (1989); Farrell v. State, 269 Ark. 361, 601 S.W.2d 835 (1980); Sterling v. State, 267 Ark. 208, 590 S.W.2d 254 (1979); Hill v. State, 250 Ark. 812, 467 S.W.2d 179 (1971). Likewise, in Farrell v. State, in affirming the circuit court’s denial of Farrell’s motion filed pursuant to Ark. Code Ann. § 16-42-101, we stated, Although we understand the purpose for which appellant offers to introduce evidence of the victim’s prior sexual conduct, no court can determine its relevancy and whether |9that relevancy outweighs its inflammatory or prejudicial nature without hearing the evidence. At the hearing below, appellant not only did not produce any facts of the child’s prior sexual conduct, he did not even contend that he knew of any. We have held many times that an evi-dentiary proffer must be sufficiently concrete and provide enough details, for the trier of fact to perform its tasks. Duncan v. State, 263 Ark. 242, 565 S.W.2d 1 (1978). Marion v. State, 267 Ark. 345, 590 S.W.2d 288 (1979). Even without the “rape- shield” statute one rule of evidence remains quite clear: no proof of the victim’s prior sexual conduct means no admission of it. Farrell, 269 Ark. at 363, 601 S.W.2d at 836. In Sterling v. State, we again explained that the evidence sought to be introduced pursuant to Ark. Code Ann. § 16-42-101 must be proffered: The motion stated the appellant had information which he desired to present to the court for consideration. We are unable to rule on evidence not proffered or questions not asked. Duncan v. State, 263 Ark. 242, 565 S.W.2d 1 (1978).... The record before us does not show there is any additional connecting evidence which renders the prior admitted consensual acts of sexual conduct relevant in the present cáse. Had the appellant proffered additional questions and answers we might have been in a position to agree with his contentions. 267 Ark. 208, 211, 590 S.W.2d at 254, 255-56 (1979). Accordingly, in Thacker’s case, at the two rape-shield hearings, Thacker must have offered the relevant evidence and also offered the probative value for which he believed the evidence to be relevant. However, the record demonstrates that Thacker failed to present the evidence at the rape-shield hearings that he now contends the circuit court erroneously refused to admit. A careful review of the record demonstrates that Thacker presented arguments solely of counsel. Simply put, Thacker did not proffer any evidence or offer any witness testimony. The isolated fact that another male’s DNA was present on the victim’s bed sheets and pillowcase is not necessarily probative. The victim was not called as a witness at either of the two rape-shield hearings, nor did Thacker present evidence to support his position. Without evidence of the time frame of the semen deposits on the bed sheets and | inpillowcase Thacker sought to introduce, the' bed sheets and pillowcase alone would have little probative value. There was no proffer whatsoever of any extrinsic evidence that Thacker may-have had to aid us in determining if Thacker was prejudiced.[1] Further, I would affirm the circuit court because Thacker waived his argument regarding Ark. Code Ann. § 16-42-101. The record demonstrates that, at trial, Thacker was presented with the opportunity to seek reconsideration of his motion but failed to do so. During direct examination, when questioned regarding Thacker’s wallet, which contained his driver’s license and was found at the victim’s home, the following colloquy occurred: PROsecutoR: Okay. Were you shown a driver’s license? Victim: I was.... And he goes, “Do you know who this is? Do you know — have' you ever seen this wallet?” And I didn’t even — ... I mean, I just immediately like, “There would be nobody’s wallet in my. house. No man comes in my house. The father of my child is the only person who does. There would be no reason why this wallet would be in the home.” He’s, like, “so you don’t have friends over? This couldn’t be someone else’s wallet?” I was, like, “No. There is no company in my house. It’s just me and nay daughter-. We do not have -anyone else come into my home. I do not have platonic 'guy friends. No, that— that’s it.” lnAlso, later during the victim’s testimony on direct examination, the following colloquy occurred: PROSECUTOR: And a second ago we talked about Dan, Mica’s father, and then you told the police that it was you and Mica living there. Is that right? Victim: It was. ProsecutoR: Okay. And did you have a boyfriend at that time? Victim: I had a gentleman that -lived across the street that I. was — I had went on maybe two dates with so boyfriend is a very loose .term. We hadn’t even been, intimate with each other. But we just kind of had — I— he noticed me from across the street and we just kind of started— Prosecutor: So y’all were kind of in the early stages of dating; right? Victim: Yes, just flirting with each there, yeah, and stuff like that. Further into the cross-examination, the topic arose again when the victim was questioned about her statement to law enforcement on the night of the crime — when she was shown’ Thacker’s driver’s license that was found at the scene.' The following colloquy occurred: Defense Attorney: You made another statement. Do you recall anything you said whether you have seen this . person before? Victim: Are you referring to the statement I made about the only two males who had been in— Defense' Attorney: I’m almost there. Victim: Okay. Defense Attoeney: There was — there was one more statement. Let me 1 ^refresh your memory and tell me if it — if it’s wrong. You told the detective, “No I don’t know who that man is. I’ve, never seen that man before in my life.” Is'that about right?. . Victim; Yes, sir. Defense Attorney: Okay. And then you went'oh to talk about the father of your child, your boyfriend. What did - you tell Detective Short about that? Victim: That there would be no reason that another man’s wallét would be in my home because only my boyfriend ■ Mike is the only man that would be in my house and that’s not his wallet. Defense" Attorney: Okay. And — and the father of your child. Victim: And the father of my child, yes. ' Additionally, Detective David Short of the Conway Police' Department, testified that upon interviewing the victim on the night of the incident, he showed her Thacker’s driver’s license and without objection testified:' Detective Short: I went to her and asked 'her — held out the driver’s license and said, - “Do you know who -this person is?” And she looked at it for just a few seconds and said “I don’t have any earthly idea who that is. I’ve never seen that person before. Where was that at?” And I said “It was in your bedroom.” Of which she said, “There should be nothing that belongs to a man in my house. My boyfriend has been, at the VA for the last however many days it had been.” I think he was scheduled to come home that day from treatment. And she said “There should be nothing that belongs to a man in my house whatsoever.” | ^Although this line of questioning regarding other males in the victim’s home arguably “opened the door” to allow the questions Thacker sought to ask, the record demonstrates that Thacker did not pursue those questions or ask the circuit court to reconsider its ruling in light of the testimony elicited by the state. Also, the line of questioning occurred not only in the State’s 'direct examination, but during Thacker’s own questioning. See Sterling, 267 Ark. at 211, 590 S.W.2d at 256. (“Appellant may cross-examine the alleged victim at the trial about events which may be relevant to his defense. It is possible that matters previously ruled inadmissible could become relevant.”) Further, the record demonstrates that Thacker did not make any motion for reconsideration. Accordingly, by failing to present evidence to demonstrate the relevancy of the evidence he sought to introduce, under Arkansas Code Annotated § 16-42-101(.c), and by failing to ask the circuit court to reconsider in light of the testimony at trial, Thacker waived this argument on appeal, and I would affirm the circuit court. In sum, based on the record before us and the evidence that was .presented, I concur in the majority’s disposition that the circuit court did not err in excluding the evidence. . Hart, J., joins. . I must respectfully note that the dissent's analysis on this issue is flawed because it presumes facts and evidence that • were not proffered or developed at either of the rape-shield hearings.